326 So.2d 337 (1976)
STAPLE COTTON COOPERATIVE ASSOCIATION
v.
J. A. PICKETT, Sr.
No. 56604.
Supreme Court of Louisiana.
January 19, 1976.
Rehearing Denied February 20, 1976.
*338 Frank Voelker, Jr., Voelker, Ragland & Brackin, Lake Providence, for plaintiff-applicant.
Felix A. Dejean, III, Opelousas, for defendant-respondent.
DIXON, Justice.
Plaintiff, a cotton marketing association, brought this suit for specific performance and other relief against the defendant, a member cotton grower. Staple contends that the defendant is obligated to sell it all cotton produced on certain farms during the 1973 season. Pickett, on the other hand, insists he is merely obligated to pay liquidated damages of 5¢ per pound. The resolution of the conflict depends upon the interpretation of several contractual agreements entered into by the parties.
The trial court rendered judgment for the plaintiff, ordering the defendant to convey the cotton and deliver the warehouse receipts to Staple according to the terms of the Sale and Purchase Agreement. On appeal the Third Circuit reversed. 313 So.2d 612 (La.App.1975).
The evidence shows that the plaintiff cotton marketing co-op had been established in the 1920's, and that plaintiff and defendant had transacted business prior to 1973. In 1973 the defendant produced cotton on twelve farms, each identified by an Agricultural Stabilization and Conservation Service serial number, which number is the key to the plaintiff's accounting system. Each farm carries a cotton allotment assigned to it, and different farmers might produce cotton on different combinations of the small farms from year to year.
In March of 1973 Staple forwarded to Pickett fourteen documents. Two were entitled "Sale and Purchase Agreement 1973-1974," one covering nine of the farms, the other three. The other twelve documents were entitled "Application for Membership and Marketing Agreement," one for each farm. Although the latter agreement relates that a member of the co-op remains as such until he withdraws, the co-op nonetheless sends one "application and agreement" for each numbered farm to the member farmer who is producing cotton that year. All fourteen documents were signed by the defendant and returned to the plaintiff.
The "Sale and Purchase Agreements" are referred to by the parties as "forward sale" contracts. They provided that Pickett agreed to sell, and Staple Cotton agreed to buy, all the cotton to be produced by Pickett on the described farms at a basic price of 30¢ per pound.
The "forward sale" of cotton, according to testimony, had been in widespread use for three or four years at the time the contract was entered into. (It was not one of the marketing options provided for in the "Application for Membership and Marketing Agreement"). In the fall of 1973 the market price of cotton increased to over 60¢ per pound, and in October, 1973 the defendant consulted an attorney with the view of withdrawing from the contract to sell his cotton crop to the plaintiff. The association subsequently filed this action.
Pickett's basic contention is that a provision in the "Application for Membership and Marketing Agreement" provides for liquidated damages for breach by the grower in the amount of 5¢ per pound. Defendant contends this result obtains because the two agreements, i. e., the "forward sale" contract and the marketing agreement, executed at the same time, should be interpreted together so that, even *339 though the "forward sale" contract has no provision for liquidated damages, the membership and marketing contract supplies one.
Plaintiff, on the other hand, contends that the agreements are separate and distinct contracts, one being totally independent of the other. Plaintiff avers that the defendant breached the "forward sale" contract, thereby entitling the co-op to a decree of specific performance and any incidental damages suffered because of the breach.
We find it unnecessary, however, to determine whether the liquidated damages provision of the membership and marketing agreement is applicable to a violation of the "forward sale" contract. Although the defendant pitches his case on the provisions of section 15(a) of the "Application for Membership and Marketing Agreement," the entire paragraph makes it clear that plaintiff is entitled to specific performance as prayed for:
"15. (a) Inasmuch as the remedy at law would be inadequate; and inasmuch as it is now and ever will be impracticable and extremely difficult to determine the actual damage resulting to the Association, should the Grower fail so to sell and deliver all of his cotton, the Grower hereby agrees to pay to the Association for all cotton delivered, sold, consigned or marketed by or for him other than in accordance with the terms hereof, the sum of five cents per pound as liquidated damages for the breach of this contract; all parties agreeing that this contract is one of a series dependent for its true value upon the adherence of each and all the growers to each and all of the said contracts.
"(b) The Grower agrees that in the event of a breach or threatened breach by him of any provisions regarding delivery of cotton, the Association shall be entitled to an injunction to prevent breach or further breach hereof and to a decree for specific performance hereof; and the parties agree that this is a contract for the purchase and sale of personal property under special circumstances and conditions, and that the buyer cannot go to the open market and buy cotton to replace any which the Grower may fail to deliver.
"(c) If the Association brings any action whatsoever by reason of a breach or threatened breach hereof, the Grower agrees to pay to the Association all costs of Court, costs for bond and otherwise, expenses of travel and all expenses arising out of or caused by the litigation and any reasonable attorney's fee expended or incurred by it in such proceedings and all such costs and expenses shall be included in the judgment and shall be entitled to the benefit of any lien securing the payment hereunder."
Section 15(a) provides that 5¢ per pound as liquidated damages is due from the grower "to the Association for all cotton delivered, sold, consigned or marketed by or for him other than in accordance with the terms hereof . . ." Pickett did not sell the cotton produced in 1973; the warehouse receipts were under his control at the time of the trial. Since the defendant has not marketed or otherwise disposed of his 1973 crop, section 15(a) has no application.
On the other hand, section 15(b) clearly provides that the association is entitled to "a decree for specific performance hereof. . ."
Also, even in the absence of a contractual provision for specific performance, i. e., considering the "forward sale" contract alone, Staple is entitled to a decree of specific performance. C.C. 1799, 2462; Sexton v. Waggoner, 66 So.2d 634, (La.App.1953). See also Bolin Farms v. American Cotton Shippers Assn., 370 F.Supp. 1353 (W.D.La.1974), wherein specific performance of a forward sale of cotton was granted.
*340 The confusion in this case apparently arises out of the fact that Staple Cotton Cooperative Association is referred to both as agent and buyer in the Sale and Purchase Agreement. However, this is readily explainable, since the contract is a printed one, and the co-op normally acts as agent of the grower. However, it is clear to us, and the trial court so concluded, that the agency provisions of paragraph 8 of the forward sale contract are mere surplusage, when the entire instrument is considered, since the first paragraph unequivocally designates Staple Cotton as the buyer.
Therefore, we find that the agreements were not ambiguous, and that plaintiff is entitled to a decree of specific performance.
Accordingly, the judgment of the Court of Appeal is reversed and the judgment of the district is reinstated, at defendant's cost.